1

2

3

4

5

6

7

8                    **IN THE UNITED STATES DISTRICT COURT**

9                    **FOR THE EASTERN DISTRICT OF CALIFORNIA**

10

11    LINDSEY SHAW,                              No.  2:25-CV-02461-DJC-DMC

12                    Plaintiff,                 ORDER

13         v.                                    And

14    CITY OF PORTOLA, et al.,                   FINDINGS AND RECOMMENDATIONS

15                    Defendants.

16

17         Plaintiff, who is proceeding pro se, brings this civil action. Pending before the

18    Court is Defendants Bonk, City of Portola, Gross, Kennedy, Murphy, and Scarlett's motion to

19    dismiss.  See ECF No. 5.  Defendant Kennedy Solutions, Inc. joined the motion to dismiss. See

20    ECF No. 16. Plaintiff filed an opposition, ECF No. 10, deemed timely by the undersigned. See

21    ECF No. 15. Defendants filed a reply. See ECF No. 18.

22         Plaintiff additionally informed the Court that she mailed a motion for clarification

23    regarding defense representation to the Court for docketing and to Defendants. At the time of this

24    order, that motion has not yet appeared on the docket. Nonetheless, the undersigned will set a

25    briefing schedule for that motion. Defendants, who indicated they received the motion late last

26    week, are directed to file an opposition on or before December 3, 2025, if they oppose the motion.

27    Plaintiff will then have until December 15, 2025, to file a reply.  The undersigned will then

28    decide whether a hearing is necessary for further argument.

                                        1

# I. PLAINTIFF'S ALLEGATIONS

In the original complaint, Plaintiff names the following as Defendants: (1) City of Portola; (2) Steve Gross; (3) Susan Scarlett; (4) Jim Murphy; (5) Ryan Bonk; (6) Jon Kennedy; (7) Kennedy Solutions, Inc.; (8) Does 1-10. Id. at 1. Plaintiff asserts thirteen federal claims, all pursuant to § 1983, as follows:

| | |
|---|---|
| Claim 1 | First Amendment Retaliation |
| Claim 2 | First Amendment Right to Record Public Officials |
| Claim 3 | First Amendment Right to Anonymous Speech |
| Claim 4 | Monell Liability |
| Claim 5 | Fourteenth Amendment Due Process |
| Claim 6 | Equal Protection / Selective Enforcement |
| Claim 7 | Fourth Amendment – Unreasonable Seizure |
| Claim 8 | Informational Privacy (Fourteenth Amendment) |
| Claim 9 | First Amendment – Defamation as Retaliation |
| Claim 10 | Spoilation of Evidence / Access to Courts Claim |
| Claim 11 | Retaliatory Surveillance (First Amendment) |
| Claim 12 | Civil Rights Conspiracy |
| Claim 13 | Retaliation for Court Access |

Id. at 27-31.

Plaintiff additionally asserts six state claims, as follows:

| | |
|---|---|
| Claim 14 | Violation of California Public Records Act |
| Claim 15 | Bane Act, Cal. Civ. Code § 52.1 |
| Claim 16 | Violation of Brown Act |
| Claim 17 | Invasion of Privacy (Cal. Const. Art. I, § 1) |
| Claim 18 | Negligence |
| Claim 19 | Misrepresentation/Fraudulent Concealment |

Id. at 31-32.

/ / /

2

1           According to Plaintiff, she went to the Clerk's Office in Portola City Hall on July

2    15, 2024, "to conduct a First Amendment audit by documenting City offices and staff." Id. at 5.

3    Plaintiff asserts that she was video recording the Clerk's office when she encountered Defendant

4    Roberts, Public Works Director, who then called Defendant Gross, City Attorney. See id. Plaintiff

5    contends that Defendant Gross "addressed Plaintiff in his official capacity as City Attorney" and

6    informed her she had no First Amendment right, nor any right, "to be in City Hall without an

7    appointment, ordered her to leave, and asserted that is was 'a crime' for her to record the

8    interaction . . . [and] demanded that Plaintiff delete her documentation." Id. at 5-6. Plaintiff

9    asserts that this violated her First Amendment rights and "the City's own ordinances [that]

10   designate [matters of public concern] as open to public inspection." Id. at 6. Plaintiff asserts that

11   though Plaintiff "refused to delete her recording," the request that she delete this file amounts to a

12   First and Fourth Amendment violation because it "constituted a government attempt to compel

13   destruction of expressive material that had already been lawfully created in a public setting." Id.

14   at 12.

15          On July 18, 2024, Plaintiff asserts that the City of Portola installed a Ring video

16   camera in City Hall. Id. at 13. Plaintiff characterizes the installation of the Ring camera "as a

17   retaliatory measure aimed at monitoring Plaintiff and deterring future audits or oversight." Id. at

18   14. Plaintiff contends that she requested the footage but the City denied her requests, "raising

19   further concern that the camera's true function was intimidation rather than transparency or

20   legitimate security." Id.

21          Plaintiff next describes an interaction on November 21, 2024, wherein Plaintiff

22   again went to "City Hall to inspect public records" during office hours, with Ms. Sims, who

23   Plaintiff describes as a "witness." Id. at 6. Plaintiff asserts that "Ms. Sims was admitted to City

24   Manager Ryan Bonk's office and invited Plaintiff to participate; Plaintiff was excluded and

25   physically prevented from entering. [paragraph numbers omitted]. Bonk then locked the office

26   door behind them, denying Plaintiff access to the same records and insisting an appointment was

27   required." Id. According to Plaintiff, Defendant Scarlett, former Interim City Manager, "was

28   present and failed to correct this misrepresentation of law." Id. Plaintiff contends this violated

1  Government Code § 6253 (a), which "guarantees public access to records during office hours

2  without a mandatory appointment required." Id. Plaintiff alleges this constituted "selective

3  exclusion" and again "chill[ed] Plaintiff's exercise of her rights." Id.

4          Plaintiff contends that on January 13, 2025, she again entered the Portola City Hall

5  during business hours "to conduct a First Amendment audit and request inspection of oaths of

6  office." Id. at 7. According to Plaintiff, after she requested oaths from January 1, 2024, to present,

7  a clerk, who is not a named defendant, pulled the folder containing the oaths, Defendant Bonk

8  then "directed" the clerk "to withhold records and stated that Plaintiff must either (1) use

9  CivAssist online portal or (2) make an appointment." Id. Plaintiff then asserted that she has a

10  right to access the documents in person during business hours, pursuant to Government Code §

11  6253 (a). Plaintiff contends that during the interaction, Defendant Bonk "consulted Defendant

12  Steve Gross, who ratified the refusal." Id. Plaintiff further alleges that Defendant Bonk "objected

13  to Plaintiff documenting the encounter on video, telling her he did not consent to being recorded,

14  even though the interaction occurred in a public reception area and Plaintiff was documenting an

15  official performing his official duties." Id. Plaintiff asserts that this "reflects the City's continuing

16  policy and practice of obstructing lawful public access to records, retaliating against individuals

17  who engage in First Amendment auditing and recording, and fulling all requests into the privately

18  owned CivAssist platform to chill anonymity and delay disclosures." Id.

19          Plaintiff asserts that on December 14, 2024, Ms. Sims "submitted CPRA Request

20  No. 364 seeking all contracts between the City of Portola and CivAssist." Id. at 8. Plaintiff

21  contends that two days later, the City responded saying there were no records responsive to the

22  request. See id. Plaintiff contends that this means that CivAssist is "not a contracted vendor or

23  recognized City agent." Id.  According to Plaintiff, this constitutes a violation of Plaintiff's First

24  Amendment rights because it "chilled [Plaintiff's] anonymous petitioning, impeded and delayed

25  access to records, and forced [Plaintiff] to expend additional time and costs navigating an

26  unauthorized platform." Id. Plaintiff additionally contends that "mandatory use of CivAssist

27  enabled collection and sharing of IP addresses and other metadata to identify Plaintiff's alias

28  'Scrinch,' expose her identity on a public-facing portal, and target her with disproportionate

4

delays and privilege assertions, causing privacy harms, reputational injury, fear of retaliation, and deterrence from continued petitioning." Id.

Plaintiff states that on January 19, 2025, she submitted CPRA Request No. 383 "asking for any final written policy, ordinance, directive, or guideline requiring use of CivAssist, a 10-day delay, or an appointment before allowing inspection of records." Id. Plaintiff asserts that the City responded telling her there were no responsive records which Plaintiff believes "confirms that no such written policy exists, and that the City's denial of immediate inspection on January 13, 2025 was arbitrary, unlawful, and without any legal basis." Id. at 9. According to Plaintiff, this further "demonstrates that the City funneled request into a private third-party platform without any lawful authority or accountability framework, violating Plaintiff's rights to anonymous petitioning, due process, and equal protection." Id. Plaintiff asserts that on January 21, 2025, the City created a record on CivAssist "documenting Plaintiff's email inquiry regarding City policy" despite the fact that "Plaintiff never requested or authorized the City to log her inquiry into CivAssist, and the City did so using Plaintiff's full name, thereby publishing her identity on a public-facing portal." Id. Plaintiff asserts that this "forced disclosure of Plaintiff's identity . . . demonstrates retaliatory intent and further chilled her exercise of First Amendment rights to request public records anonymously." Id.

Plaintiff alleges that she found a "June 6, 2024 solicitation letter signed by Defendant Susan Scarlett on City letterhead" that "solicited funds from the North American Railway Foundation on behalf of the Feather Rail Society (FRRS)." Id. at 10. Plaintiff contends that on August 16, 2024, Plaintiff "submitted a CPRA request for solicitation and fundraising letters issued by City officials," but was told no such records existed. Id. Plaintiff asserts that "Billing records from Defendant Steve Gross confirm that on June 6, 2024, he 'review[ed] email from client and documents from FRRS requesting letter of support from the city . . .'" and that he "regularly 'review[ed] and exchange[d] emails with client regarding PRA request[s]." Id. (bracketed changes in original). Plaintiff contends that Defendant Scarlett received over $10,000 from FRRS and Defendant Gross provides legal services to FRRS, for an amount less than $10,000 so such income was not recorded in his Form 700. See id. According to Plaintiff, that

1    "the same City officials responsible for denying Plaintiff's CPRA request were financially

2    entangled with the very nonprofit that the solicitation letter was intended to benefit, raising

3    serious conflict-of-interest concerns." Id. Plaintiff asserts that this demonstrates that Defendants

4    Gross and Scarlett "acted to conceal records for their own benefit, protect outside financial

5    interests, and obstruct Plaintiff's oversight." Id. at 11.

6            Plaintiff contends that these facts show a "pattern of retaliation against

7    anonymous public records requestors." Id. at 14. According to Plaintiff, Defendants "engaged

8    in a continuing course of conduct designed to obstruct Plaintiff's and other's" right to make

9    California Public Records Act (CPRA) requests anonymously. Id. Plaintiff contends this right is

10   conferred by Gov. Code § 6253 (e), Article I, § 1 of the California Constitution, NAACP v.

11   Ala. ex rel. Patterson, 357 U.S. 449 (1958), and Doe v. Reed, 561 U.S. 186, 194 (2010). See id.

12   Plaintiff next asserts that on July 25, 2024, Defendant Murphy "publicly stated" at a City

13   Council meeting that he was "'monitoring the City of Portola website under public information

14   requests'" and he noted an increase of requests, and that "'many of them are by the same

15   people, and by the same people using other names.'" Id. at 15. Plaintiff contends this

16   "demonstrates that City officials were monitoring CivAssist submissions and attempting to

17   identify anonymous requesters." Id.

18           Plaintiff asserts that on July 18, 2024, "an alias requestor [asked for] 'the email

19   address linked to the clearly drunk texting public records requestor 'Scrinch,'' [and Defendant

20   Scarlett then] publicly posted the email scrintch@gmail.com on the CivAssist portal, thereby

21   unmasking the anonymous requester and adopting the derogatory characterization in the

22   request." Id. Plaintiff contends that On June 5, 2025, "the City allowed another hostile 'request'

23   to be posted [on CivAssist] stating: 'your city has a lot of assholes making requests.'" Id.

24   According to Plaintiff, that "the City left this comment online rather than moderating or

25   removing it, signaling endorsement of hostility toward anonymous requestors." Id. at 15-16.

26   Plaintiff asserts that in an August 14, 2024, City Council meeting, Defendant Turner made a

27   statement that was recorded in the official minutes, saying

28   / / /

6

1

2         Anyone who wants to stay anonymous is nothing but a coward . . . that goes for
     people asking for public records requests as anonymous. I want to know who my
     accusers are . . . my reputation and safety is just as important as the person who

3         wants to stay anonymous.

4        Id. at 16 (quoting Defendant Turner, all edits in original).

5    Plaintiff finds that this "directly stigmatized Plaintiff's exercise of her constitutional right to

6    petition the government for redress and engage in protected anonymous speech." Id.

7        Plaintiff asserts that on October 14, 2024, she submitted a request to Defendant

8    Murphy to learn how the councilmembers "had identified anonymous requestors," but

9    Defendant Scarlett "denied the request, asserting blanket attorney-client privilege." Id. at 16-17.

10   Plaintiff contends the assertion of this privilege was "improper" and "effectively admitted that

11   it used technical means, such as IP address tracking, to piece anonymity" which Plaintiff

12   characterizes as "a retaliatory act intended to unmask and stigmatize Plaintiff and others who

13   exercised their petitioning rights." Id. at 17. According to Plaintiff, following this assertion of

14   privilege, she requested a privilege log but was told on November 22, 2024, that there is no

15   privilege log. Id. at 19. Plaintiff contends that despite CivAssist being a private company, with

16   no contract with the City, the assertion of attorney-client privilege over communications

17   between the City and CivAssist employees, "revealed that the City treated CivAssist as the

18   functional equivalent of staff, thereby making it a state actor for purposes of § 1983." Id. at 19.

19       Plaintiff contends that Defendants misused CivAssist "to pierce anonymity"

20   despite the platform not having a "functioning privacy policy; clicking 'Privacy Policy'

21   redirected to the home page." Id. at 17. Plaintiff asserts that she "documented" this error in a

22   video taken in August 2024, and the policy was subsequently changed on October 17, 2024,

23   three days after Plaintiff's request to Defendant Murphy. Id. at 18. Plaintiff states that "the

24   timing of this change strongly suggests a reactive modification to obscure or justify CivAssist's

25   practices." Id. at 18. Plaintiff contends that despite there not being a contract between the City

26   and CivAssist, City officials used the platform to "collect and share IP address data" that was

27   "cross-reference[ed with] Plaintiff's alias requests . . . thereby unmasking her identity." Id. at

28   17. Plaintiff attaches Exhibits L and L-A, which Plaintiff believes "confirm" CivAssist was

1  used in this manner.  Id. Further, Plaintiff asserts that Defendants used "'attorney-client

2  privilege' to conceal those records." Id. at 18.

3            Plaintiff contends that in response to her CPRA Request No. 451 on June 17,

4  2025, she received "redacted IP logs, City's website policy, and CivAssist's privacy policy,"

5  while she was informed that other records were protected by attorney-client privilege. Id. at 20.

6  Plaintiff contends that this "confirmed that the City and CivAssist had in fact used IP tracking

7  and metadata to deanonymize Plaintiff." Id.

8            Plaintiff provides Exhibit K, which is a letter dated December 9, 2024, from

9  Defendant Gross, addressed to Plaintiff's alias "Scrinch," which "confirmed that the City had

10  internally identified 'Scrinch' as Plaintiff and was weaponizing that knowledge." Id. at 19.

11  According to Plaintiff, the letter was written in retaliation and "copied outside litigation counsel

12  representing the City of Portola in unrelated proceedings." Id. Plaintiff contends Defendant

13  Gross additionally "asserted that communications with CivAssist were protected by attorney-

14  client privilege." See id. at 19-20.

15            Plaintiff next describes a "cyberattack cover-up and retaliation," in February

16  2024, were the City had a "Trojan/ransomware infection" that implicated "sensitive personal

17  data of Plaintiff and other residents." Id. at 21. Plaintiff asserts that "rather than preserving

18  forensic evidence [Defendant Kennedy and individual unnamed as a Defendant] deleted IT logs

19  and backups" which "eliminated the ability to determine whether personal data had been

20  accessed and impaired Plaintiff's ability to vindicate her rights." Id. Plaintiff contends that the

21  City did not notify affected individuals, violating her "informational privacy rights." Id.

22  According to Plaintiff, when she "raised concerns [] and demanded accountability, Defendants

23  retaliated by obstructing her record access, stigmatizing her civic oversight, and targeting her

24  anonymity." Id. at 21-22. Plaintiff characterizes this as "part of a broader pattern of obstruction

25  and retaliation." Id. at 22.

26            Next, Plaintiff describes what she calls "selective retaliation and unequal

27  treatment of requestors," and provides statistics on three requestors—Plaintiff under her real

28  name, Plaintiff under her anonymous alias Scrinch, and Ms. Sims—from July 1, 2024, and

8

1    December 31, 2024. Id. at 22-23. Plaintiff asserts that "these figures reveal that Plaintiff – both

2    under her alias and her real name – was disproportionately subjected to delayed responses and

3    assertions of attorney-client privilege compared to other similarly situated requestors." Id. at 23.

4    Plaintiff contends that these statistics "reflect targeted retaliation based on Plaintiff's identity as

5    a critic of the City and her exercise of First Amendment Rights," which violates the Equal

6    Protection Clause and shows municipal liability under Monell. Id. Plaintiff contends she

7    suffered an injury of being "deprived [] of timely access to information needed for ongoing

8    oversight, forced duplicative requests and appeals (time and costs), and chilled her participation

9    by signaling she would be penalized for requesting records." Id.

10          Finally, Plaintiff describes "defamatory statements and retaliatory

11   mischaracterization of Plaintiff's Writ petition." Id. at 24. Plaintiff contends that at a City

12   Council meeting on May 14, 2025, Plaintiff's "pending writ of mandate under Gov. Code §

13   36513[1] was discussed publicly." Id. According to Plaintiff, Defendant Murphy characterized

14   Plaintiff's "public notice regarding the writ as a 'scam,' and Councilmember Leah Turner

15   explicitly agreed with this characterization." Id. Plaintiff asserts that Defendant Murphy

16   "accused Plaintiff of attempting to force the City to 'discriminate against' a pregnant

17   councilmember, misrepresenting Plaintiff's petition." Id. Plaintiff contends that "these

18   statements were false, defamatory, and made with retaliatory animus." Plaintiff asserts that

19   these statements "were further amplified by the City's failure to correct the record" and "caused

20   reputational harm to Plaintiff and reinforced the City's pattern of targeting Plaintiff for

21   engaging in protected civic oversight." Id.

22          In support of the complaint and allegations, Plaintiff attaches Exhibits A through

23   Exhibit L-A. Id. at 35-63.

24   / / /

25   / / /

26

27   [1] Cal. Gov. Code § 36513 establishes the requirements for city councilmembers attendance at
     city council meetings, providing that if councilmembers do not comply, their position becomes
28   vacant.

**II. LEGAL STANDARD**

In considering a motion to dismiss, the Court must accept all allegations of material fact in the complaint as true.  See Erickson v. Pardus, 551 U.S. 89, 93-94 (2007).  The Court must also construe the alleged facts in the light most favorable to the plaintiff.  See Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); see also Hosp. Bldg. Co. v. Rex Hosp. Trustees, 425 U.S. 738, 740 (1976); Barnett v. Centoni, 31 F.3d 813, 816 (9th Cir. 1994) (per curiam).  All ambiguities or doubts must also be resolved in the plaintiff's favor.  See Jenkins v. McKeithen, 395 U.S. 411, 421 (1969).  However, legally conclusory statements, not supported by actual factual allegations, need not be accepted.  See Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949-50 (2009).  In addition, pro se pleadings are held to a less stringent standard than those drafted by lawyers.  See Haines v. Kerner, 404 U.S. 519, 520 (1972).

Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief" in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests."  Bell Atl. Corp v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)).  However, in order to survive dismissal for failure to state a claim under Rule 12(b)(6), a complaint must contain more than "a formulaic recitation of the elements of a cause of action;" it must contain factual allegations sufficient "to raise a right to relief above the speculative level."  Id. at 555-56.  The complaint must contain "enough facts to state a claim to relief that is plausible on its face."  Id. at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Iqbal, 129 S. Ct. at 1949.  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  Id. (quoting Twombly, 550 U.S. at 556).  "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility for entitlement to relief."  Id. (quoting Twombly, 550 U.S. at 557).

/ / /

/ / /

1   In deciding a Rule 12(b)(6) motion, the Court generally may not consider materials

2   outside the complaint and pleadings.  See Cooper v. Pickett, 137 F.3d 616, 622 (9th Cir. 1998);

3   Branch v. Tunnell, 14 F.3d 449, 453 (9th Cir. 1994).  The Court may, however, consider: (1)

4   documents whose contents are alleged in or attached to the complaint and whose authenticity no

5   party questions, see Branch, 14 F.3d at 454; (2) documents whose authenticity is not in question,

6   and upon which the complaint necessarily relies, but which are not attached to the complaint, see

7   Lee v. City of Los Angeles, 250 F.3d 668, 688 (9th Cir. 2001); and (3) documents and materials

8   of which the court may take judicial notice, see Barron v. Reich, 13 F.3d 1370, 1377 (9th Cir.

9   1994).

10      Finally, leave to amend must be granted "[u]nless it is absolutely clear that no

11  amendment can cure the defects."  Lucas v. Dep't of Corr., 66 F.3d 245, 248 (9th Cir. 1995) (per

12  curiam); see also Lopez v. Smith, 203 F.3d 1122, 1126 (9th Cir. 2000) (en banc).

13

14                                    **III. DISCUSSION**

15      Defendants Bonk, City of Portola, Gross, Kennedy, Murphy, and Scarlett filed

16  motion to dismiss arguing that Plaintiff fails to state a claim under any authority.  See ECF No. 5.

17  Defendant Kennedy Solutions, Inc. joined the motion to dismiss. See ECF No. 16. Generally,

18  Defendants argue that Plaintiff fails to state a claim under the First, Fourth, or Fourteenth

19  Amendments.  See ECF No. 5-1, pgs. 12-20.

20      In Plaintiff's opposition, she argues generally that, at this stage of litigation, her

21  complaint provides sufficient allegations for her claims to proceed, and if it does not, she should

22  be provided leave to amend. See ECF No. 10. Plaintiff contends that her complaint is not

23  conclusory as she provides "specific facts identifying who acted, when, and what occurred." Id. at

24  3. Plaintiff additionally raises an issue with service to her email address[2] and requests that the

25  Court "recognize service as complete." Id.

26  / / /

27

28  [2] This Court previously addressed this in ECF No. 15, finding service was proper as it was
    completed via postal mail, not email.

11

1            In their reply, Defendants re-assert their argument that "no federal right or claim is

2  stated" in the complaint. ECF No. 18.

3            Both parties presented arguments as to state law claims. However, in that the Court

4  here finds that Plaintiff's complaint fails to establish a viable federal claim, the undersigned will

5  issue these findings and recommendations as to the federal claims only, and if and when Plaintiff

6  asserts a viable federal claim, state claims may be addressed. For the reasons explained herein,

7  the undersigned recommends granting Defendants' motion to dismiss as to all claims, with leave

8  to amend.

9       **A.**    <u>**Claims 1 and 3: First Amendment Retaliation and Right to Anonymous**</u>

10          <u>**Speech**</u>

11            Plaintiff asserts that in response to her public records requests and recording of a

12  public conversation on July 15, 2024, Defendants retaliated by denying her requests and

13  identified Plaintiff as an anonymous requester. <u>See</u> ECF No. 1, pgs. 27-28. Defendants argue that

14  "there is no constitutional right to inspect City records" and any such right is only created by

15  California law. ECF No. 5-1, pg. 12. Next, Defendants assert that because the Constitution does

16  not confer such a right, there can be no right to anonymously request City records. <u>See id.</u> at 13.

17  Defendants contend that though Plaintiff characterizes her PRA requests as speech, "making

18  requests for public records does not implicate the type of political, religious, or literary activity

19  entitled to anonymity under the First Amendment." <u>Id.</u> Defendants further contend that there was

20  no "'unmasking'" of Plaintiff's identity because Plaintiff "frequently availed herself of PRA

21  requests (26 of them) and [] she made a number of her PRA request in person and was known to

22  City staff." <u>Id.</u> at 14. Thus, Defendants argue "there is no merit to the claim that [Plaintiff] was

23  'outed' from her 'anonymous' gmail address." <u>Id.</u>

24            In her opposition, Plaintiff argues that her CPRA requests were protected First

25  Amendment activity, and in retaliation for those requests, "City officials used the CivAssist portal

26  to identify anonymous requesters and publicly posted Plaintiff's alias-linked email address,

27  chilling her right to petition anonymously. ECF No. 10, pg. 5 (citing <u>McIntyre v. Ohio Elections</u>

28  <u>Comm'n</u>, 514 U.S. 334 (1995)). Plaintiff further contends that Defendants denied her "access to

inspect public records while admitting others, demonstrating viewport discrimination and retaliation for prior petitioning." Id.

In their reply, Defendants contend that

At least one district court to have addressed the issue has held that the act of submitting public records requests is not constitutionally protected activity. *Brennan v. Aston*, No. 17-cv-1928-JCC-MLP, 2019 U.S. Dist. LEXIS 180075 at * 16 (W.D. Wash. Aug. 16, 2019) ("Because Plaintiff does not have a First Amendment right to request public records, his retaliation claim against Deputy Machyo fails as a matter of law.")

ECF No. 18, pg. 2.

Defendants distinguish the facts here from McIntyre, asserting that Plaintiff's reliance on that case is misplaced because that case "involved the anonymous distribution of campaign literature, not PRA requests" and such distribution is a protected First Amendment activity, whereas PRA requests are not. Id.

To state a First Amendment retaliation claim, a plaintiff must plausibly allege "that (1) he was engaged in a constitutionally protected activity, (2) the defendant's actions would chill a person of ordinary firmness from continuing to engage in the protected activity, and (3) the protected activity was a substantial or motivating factor in the defendant's conduct." O'Brien v. Welty, 818 F.3d 920, 932 (9th Cir. 2016) (quoting Pinard v. Clatskanie Sch. Dist. 6J, 467 F.3d 755, 770 (9th Cir. 2006)).

Plaintiff contends the right to record public conversations is protected First Amendment activity, and cites Fordyce v. City of Seattle, 55 F.3d 436 (9th Cir. 1995) and Askins v. United States Dep't of Homeland Sec., 899 F.3d 1035 (9th Cir. 2018) in support of such argument. In Askins, the Ninth Circuit held that "the First Amendment protects the right to photograph and record matters of public interest." Askins, at 1044. Thus, this Court finds that, at this stage, Plaintiff has established that her recording of her conversation on July 15, 2024, was a protected First Amendment activity. Plaintiff asserts that the adverse action taken in response to her recording was that she was removed from City Hall and denied access to public records. See ECF No. 1, pg. 27. However, Plaintiff alleges that she was "ordered" to leave city hall and told that she needed to have an appointment. Id. at 5-6. The facts are not clear about whether Plaintiff

1  was actually removed from City Hall, whether she was denied access to records, or if she was

2  instead told she needed to go through a different procedure (making an appointment) to access

3  such records. Thus, the undersigned will recommend Defendants' motion to dismiss as to Claim

4  1, with leave to amend.

5          As to Plaintiff's assertion that the right to make public record requests is

6  constitutionally protected, Plaintiff cites to <u>McIntyre v. Ohio Elections Comm'n</u>, 514 U.S. 334,

7  115 S. Ct. 1511 (1995). However, this Court agrees with Defendants that the facts of that case are

8  distinguishable from the facts alleged here. In <u>McIntyre</u>, the Supreme Court held anonymity is

9  tied to First Amendment expression, in relation to handing out political leaflets, which is a

10  protected First Amendment activity. <u>McIntyre v. Ohio Elections Comm'n</u>, 514 U.S. 334, 342-47

11  (1995). Thus, anonymity is protected under the First Amendment when the underlying activity is

12  protected by the First Amendment. Similarly, Plaintiff asserts that her "right to petition

13  government agencies anonymously is constitutionally protected," citing <u>NAACP v. Ala. ex rel.</u>

14  <u>Patterson</u>, 357 U.S. 449 (1958) and <u>Doe v. Reed</u>, 561 U.S. 186, 194 (2010). In <u>NAACP</u>, the

15  Supreme Court held that mandatory disclosure of members' identities violates the freedom of

16  association, a constitutionally protected activity. In <u>Doe</u>, the Supreme Court held that a law

17  requiring public disclosure of referendum petitions, a constitutionally protected activity, is

18  constitutional. Thus, the holding in <u>Doe</u> does not apply to Plaintiff's allegations. Moreover,

19  Plaintiff fails to establish that the public records requests are constitutionally protected activity.

20  Thus, as to Plaintiff's Claim 3, the undersigned will recommend Defendants' motion to dismiss,

21  with leave to amend.

22      **B.**    **<u>Claim 2: First Amendment Right to Record Public Officials</u>**

23          Defendants argue that though the Ninth Circuit "has recognized a First

24  Amendment 'right to film matters of public interest,'" Plaintiff's allegation is that she was told it

25  was unlawful to record without consent, but Plaintiff continued to record. ECF No. 5-1, pg. 18

26  (quoting <u>Fordyce v. City of Seattle</u>, 55 F.3d 436, 439 (9th Cir. 1995)). Defendants contend that

27  because Plaintiff continued recording, there was no denial of her right to record. <u>Id.</u>

28  / / /

1  Plaintiff argues that her recording of the "public meeting" on July 15, 2024,

2  constituted protected First Amendment activity and when Defendants directed her to delete a

3  recording of her interaction with them in public, it "constituted coercive interference with

4  protected expressive activity." ECF No. 10, pgs. 4-5.

5  As addressed above, the complaint sufficiently establishes that Plaintiff's act of

6  recording was a protected First Amendment activity. However, the record before the Court is

7  unclear as to the extent the recording was continued notwithstanding the direction of the

8  Defendant, or alternatively the point at which the recording was terminated. As pled currently, the

9  Court cannot find that Plaintiff's  First Amendment rights were restricted here. Though Plaintiff

10  maintains that ordering her to stop recording and delete the recording constitutes "coercive

11  interference," the plain meaning of interference is that it partially or fully hinders or inhibits.

12  Here, Plaintiff's complaint states she did record and kept the recording of the conversation, there

13  is not an allegation of hindering or inhibiting her activity, even partially.  Thus, the undersigned

14  will recommend Defendants' motion to dismiss as to Claim 2, with leave to amend.

15  **C.      Claim 5: Fourteenth Amendment Due Process (Procedural and Substantive)**

16  Plaintiff contends that she was "deprived of state-created rights of access to public

17  records and lawful participation in government without adequate notice, justification, or process."

18  ECF No. 1, pg. 28. Again relying on the argument that there is no constitutional right to inspect

19  City records, Defendants argue that Plaintiff therefore has "no entitlement for a due process

20  claim," because she has failed to identify "any federally protected liberty or property interest."

21  ECF No. 5-1, pg. 14. Plaintiff contends in her opposition that she was deprived procedural due

22  process when "City officials arbitrarily denied her the ability to inspect public records that were

23  physically available for review, while providing no ordinance, rule, or written procedure

24  governing the City's newly impost 'appointment-only' access policy." ECF No. 10, pg. 6.

25  The Due Process Clause protects against the deprivation of liberty or property

26  without due process. Portman v. Cnty. of Santa Clara, 995 F.2d 898, 905 (9th Cir. 1993). In order

27  to state a claim of deprivation of due process, a plaintiff must allege the existence of a liberty or

28  property interest for which the protection is sought. See Ingraham v. Wright, 430 U.S. 651, 672

1    (1977); Bd. of Regents v. Roth, 408 U.S. 564, 569 (1972). A section 1983 claim based upon

2    procedural due process has three elements: (1) a liberty or property interest protected by the

3    Constitution; (2) a deprivation of the interest by the government; (3) lack of process. Portman,

4    995 F.2d at 904. Due process protects against the deprivation of property where there is a

5    legitimate claim of entitlement to the property. See Bd. of Regents, 408 U.S. at 577. Protected

6    property interests are created, and their dimensions are defined, by existing rules that stem from

7    an independent source – such as state law – and which secure certain benefits and support claims

8    of entitlement to those benefits. See id. However, even though "state law creates a property

9    interest, not all state-created rights rise to the level of a constitutionally protected interest." Brady

10   v. Gebbie, 859 F.2d 1543, 1548 n. 3 (9th Cir. 1988).

11           The Court agrees with Defendants that a section 1983 due process claim requires

12   showing a constitutionally protected interest. Here, Plaintiff states that her right to inspect records

13   is afforded to her by Government Code § 6253. The Court does not address whether this is a

14   constitutionally protected interest because Plaintiff does not establish that she was deprived of

15   this right. Plaintiff contends that she was told she must make requests for records via CivAssist or

16   by making an appointment, not that she could not access records at all. Cal. Gov. Code § 6253(c)

17   provides that:

18           (c) Each agency, upon a request for a copy of records, shall, within 10 days from
             receipt of the request, determine whether the request, in whole or in part, seeks

19           copies of disclosable public records in the possession of the agency and shall
             promptly notify the person making the request of the determination and the

20           reasons therefor.

21           Cal. Gov. Code § 6253.

22           Thus, it appears that requests for records must be responded to within ten days,

23   and therefore denying Plaintiff access to records the day she makes the request is not a denial of

24   the rights afforded by Cal. Gov. Code § 6253, but potentially in line with the statute, depending

25   on the timeline of response after Plaintiff's request. Plaintiff does not provide a timeline. As to

26   Plaintiff's claim that she was denied "lawful participation in government," it appears this is in

27   reference to her access to documents, not a separate liberty interest. To the extent that Plaintiff

28   is asserting a different constitutionally protected interest, it is not clear to the Court what the

16

1    basis of that interest is. Therefore, the undersigned will recommend Defendants' motion to

2    dismiss as to Claim 5, with leave to amend.

3          **D.**      <u>**Claim 6: Equal Protection / Selective Enforcement**</u>

4             Plaintiff contends that she was discriminated against as a class of one,

5    demonstrated by the statistics she gathered recording the "disproportionate delays, denials, and

6    privilege claims compared to other requestors (80% vs. 30% lateness)." ECF No. 1, pg. 29.

7    Defendants argue that "the Complaint does not contain any allegation that Ms. Shaw is a member

8    of a protected class, or that Defendants acted with discriminatory intent based on such

9    membership." ECF No. 5-1, pg. 15. Plaintiff asserts that she "states a plausible 'class-of-one'

10   equal protection claim [citation omitted] [and] Plaintiff need not allege membership in a protect

11   class to sustain a class-of-one claim." ECF No. 10, pgs. 6-7 (citing <u>Willowbrook v. Olech</u>, 528

12   U.S. 562 (2000)).

13            In their opposition, Defendants argue that the Supreme Court's recognition of a

14   class of one "applies in limited circumstances and cannot be applied where the governmental

15   action involves discretionary determinations" as is here. ECF No. 18, pg. 3. Defendants contend

16   that "a public agency's response under the PRA involves discretionary determinations regarding

17   the scope of a request, whether any exemptions or redactions apply, and whether there is a need to

18   extend response times." <u>Id.</u> Further, Defendants assert that though Plaintiff provides statistics for

19   requests from Plaintiff, her alias, and Ms. Sims, Plaintiff does not show "how the requests among

20   these three requestors are similar in 'all material aspects.'" <u>Id.</u> at 4 (quoting <u>Lucero v. Oak Run</u>

21   <u>Elem. Sch. Dist.</u>, No. 2:24-cv-02854-DC-SCR, 2025 LX 39102 at *12 (E.D. Cal. May 2, 2025)).

22            Equal protection claims arise when a charge is made that similarly situated

23   individuals are treated differently without a rational relationship to a legitimate state purpose.  <u>See</u>

24   <u>San Antonio School District v. Rodriguez</u>, 411 U.S. 1 (1972).  In order to state a § 1983 claim

25   based on a violation of the Equal Protection Clause of the Fourteenth Amendment, a plaintiff

26   must allege that defendants acted with intentional discrimination against plaintiff, or against a

27   class of individuals which included plaintiff, and that "there is no rational basis for the difference

28   in treatment."  <u>Village of Willowbrook v. Olech</u>, 528 U.S. 562, 564 (2000) (holding that equal

1    protection claims may be brought by a "class of one").

2            The Court finds Plaintiff may assert a cognizable class of one claim, however,

3    agrees with Defendants that the data provided is too limited to establish that "there is no rational

4    basis for the difference in treatment." Village of Willowbrook, at 564. First, Plaintiff

5    characterizes certain responses as "late," without providing a timeline for what the standard for

6    late, versus timely, responses are. See ECF No. 1, pgs. 22-23. As to the assertion of privilege, it

7    appears that all three individuals (Plaintiff, Plaintiff's alias 'Scrinch,' and Ms. Sims), were told

8    six requests were barred by privilege, despite submitting a different number of requests. See id. at

9    23. It is possible the three individuals submitted six of the same requests, all resulting in a claim

10   of privilege. If privilege was asserted in response to the same requests by different individuals,

11   Plaintiff cannot establish different treatment. Thus, there is insufficient information for a

12   cognizable Equal Protection claim because the facts provided do not show that what the delay

13   was or whether the assertion of privilege was in response to the same requests. Therefore, the

14   undersigned will recommend Defendants' motion to dismiss as to Claim 6, with leave to amend.

15           **E.    Claim 4: Monell Liability**

16           Defendants argue that first, Plaintiff "has not plausibly alleged a constitutional

17   violation in the first place, which alone defeats Monell liability." ECF No. 5-1, pg. 19. Next,

18   Defendants assert that "the alleged 'policies' are described in vague, conclusory terms without

19   supporting facts," and that the allegations do not show a patter sufficient to establish a policy

20   because "interactions with Ms. Shaw alone do not establish a custom amounting to official City

21   policy)." Id. at 19-20.

22           Plaintiff contends that Defendants, employees of the City of Portola "directly

23   ordered, participated in, and ratified acts of retaliation and denial of public access. The City

24   Council subsequently ratified these actions by continuing to compensate and publicly defend the

25   officials." ECF No. 10, pg. 7 (citing Lytle v. Carl, 382 F.3d 978 (9th Cir. 2004) and Christie v.

26   Iopa, 176 F.3d 1231 (9th Cir. 1999)). Next, Plaintiff argues that "a single decision by a final

27   policymaker may constitute official policy under *Pembaur v. City of Cincinnati*, 475 U.S. 469

28   (1986)." Id. Further, Plaintiff asserts that the "repeated use of the CivAssist platform to identify

18

1    and expose anonymous petitioners, along with the City's ongoing misuse of attorney-client

2    privilege . . . demonstrates a continuing municipal custom." Id.

3         Defendants argue in their opposition that Plaintiff fails to identify "the specific

4    actions were that [policymakers] ratified or how under state law the City Attorney and Managers

5    are final policymakers for the City for purposes of ratifying those actions." ECF No. 18, pg. 4.

6         Municipalities and other local government units are among those "persons" to

7    whom § 1983 liability applies.  See Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690 (1978).

8    Counties and municipal government officials are also "persons" for purposes of § 1983.  See id.

9    at 691; see also Thompson v. City of Los Angeles, 885 F.2d 1439, 1443 (9th Cir. 1989).  A local

10   government unit, however, may not be held responsible for the acts of its employees or officials

11   under a respondeat superior theory of liability.  See Bd. of County Comm'rs v. Brown, 520 U.S.

12   397, 403 (1997).  Thus, municipal liability must rest on the actions of the municipality, and not of

13   the actions of its employees or officers.  See id.  To assert municipal liability, therefore, the

14   plaintiff must allege that the constitutional deprivation complained of resulted from a policy or

15   custom of the municipality.  See id.

16        Here, Plaintiff contends that the City of Portola is liable under Monell for

17   "constitutional injuries, including suppression of her right to petition, denial of equal protection

18   through selective treatment of record requests, and due process violations." ECF No. 1, pg. 28. In

19   finding that the complaint fails to assert cognizable claims as to those alleged underlying

20   constitutional violations, (as detailed above), the Court cannot find the municipality is liable.

21   Further, as currently pleaded, it is not clear that any alleged constitutional violation would be the

22   result of a policy or custom. Thus, the undersigned will recommend granting Defendants' motion

23   to dismiss as to Claim 4, with leave to amend.

24       **F.**    **Claim 7: Fourth Amendment – Unreasonable Seizure**

25        Plaintiff contends that her Fourth Amendment rights were violated when

26   Defendant "Gross ordered Plaintiff to delete her lawfully created video recording, amounting to

27   an attempted compelled seizure/destruction of expressive material." ECF No. 1, pg. 29.

28   Defendants argue that there was no search nor seizure alleged to establish a Fourth Amendment

1   violation. ECF No. 5-1, pg. 18. Defendants assert that a Fourth Amendment violation requires "a

2   restraint on a person's movement," or "a seizure of property requires 'some meaningful

3   interference with an individual's possessory interest in that property.'" Id. (citing Graham v.

4   Connor, 490 U.S. 386, 395 n.10 (1989); quoting Soldal v. Cook County, 506 U.S. 56, 61 (1992)).

5   Defendants argue that Plaintiff has not established either because she "was not restrained and was

6   free to go, and did so," and though the "City Attorney 'attempted' to compel deletion of her

7   recording by ordering her to delete it [citation omitted]. No seizure of that recording is actually

8   alleged." Id.

9          Plaintiff contends that "ordering deletion of expressive material constitutes an

10  attempted seizure" and "even an unexecuted coercive demand" is sufficient to establish a Fourth

11  Amendment violation. ECF No. 10, pgs. 5-6. According to Plaintiff, directing her to delete the

12  recording was an "interference with Plaintiff's possessory and expressive interests protected by

13  the Fourth Amendment" sufficient under Soldal v. Cook Cty., 506 U.S. 56, 61 (1992). Id. at 6.

14         In their opposition, Defendants argue that "there is no 'attempted seizure' under

15  the Fourth Amendment." ECF No. 18, pg. 3 (citing Brendlin v. California, 551 U.S. 249, 254

16  (2007) ("there is no seizure without actual submission; otherwise, there is at most an attempted

17  seizure, so far as the Fourth Amendment is concerned.")).

18         The Fourth Amendment protects individuals from unreasonable search and seizure

19  by the government. See U.S. Const. Amend. IV.  Plaintiff asserts that Soldal supports her claim

20  that directing her to delete the video was an "interference" sufficient to establish a Fourth

21  Amendment violation. ECF No. 10, pgs. 5-6. This Court disagrees. In Sodal, the Supreme Court

22  addressed the seizure of an individual's mobile home that was physically taken from the park

23  where Plaintiffs parked it. See generally Sodal, 506 U.S. Plaintiff being directed to delete a video,

24  which she did not delete, is not analogous to an individual's home being physically moved from

25  the location where the individual put it. Nor does Sodal establish that an attempted seizure can

26  amount to a Fourth Amendment violation. The undersigned will recommend Defendants' motion

27  to dismiss as to Claim 7, with leave to amend.

28  / / /

1  / / /

2        G.        **Claim 8: Informational Privacy (Fourteenth Amendment)**

3              Plaintiff contends that her "personal data was stored on the compromised

4  accounting workstation (cyberattack). The City deleted forensic logs and failed to notify Plaintiff

5  of possible breach, depriving her of the ability to protect herself." ECF No. 1, pg. 29. Defendants

6  argue that there is "no federal right to support" this claim. ECF No. 5-1, pg. 16. Defendants assert

7  that this claim "is essentially a state law claim for negligence or a state statutory violation[,

8  which] . . . is not sufficient to state a claim for relief under §1983." Id. Further, Defendants

9  contend that Plaintiff alleges that only her name was disclosed, which "ordinarily does not trigger

10  constitutional concerns." Id. (citing Varo v. L.A. Cnty. Dist. Attorney's Office, 473 F. Supp. 3d

11  1066, 1075 (C.D. Cal. 2019)).

12              As explained above, a section 1983 claim based upon procedural due process has

13  three elements: (1) a liberty or property interest protected by the Constitution; (2) a deprivation of

14  the interest by the government; (3) lack of process. Portman, 995 F.2d at 904. It appears Plaintiff

15  is asserting that she has a protected interest in her personal data. However, Plaintiff does not

16  establish that she has a constitutionally protected interest in her personal data, what that personal

17  data was, nor does Plaintiff show that she was deprived of that data. If Plaintiff is instead

18  asserting that she has an interest in the City's forensic logs, she again fails to establish such an

19  interest is protected by the Constitution. Further, the facts underlying this claim are not entirely

20  clear to the Court, such as the definition of what Plaintiff refers to in her complaint as a

21  "compromised accounting workstation". Thus, the undersigned will recommend Defendants

22  motion to dismiss as to Claim 8, with leave to amend.

23  / / /

24  / / /

25  / / /

26  / / /

27  / / /

28  / / /

1

**H.**    **Claims 9, 11 and 13: Defamation as Retaliation, Retaliatory Surveillance, and**

2

**Retaliation for Court Access**

3              Plaintiff contends that Defendants retaliated against her for her exercising of her

4    First Amendment rights, by calling her writ petition a "scam" on May 14, 2025,[3] and installing a

5    Ring camera inside City Hall. ECF No. 1, pgs. 29-31. Defendants argue that Plaintiff's Claims 9,

6    11, and 13 do not allege an adverse action sufficient to establish First Amendment retaliation. See

7    ECF No. 5-1, pg. 17. As to the ring camera, Defendants contend that Plaintiff "has no reasonable

8    expectation of privacy in City Hall or public spaces. See United States v. Gonzalez, 328 F.3d 543,

9    548 (9th Cir. 2003) (video surveillance in public places does not violate the Constitution)." Id. As

10   to Defendants comments at the City Council meeting, Defendants argue that "Defamation is not

11   sufficient to state an adverse action." Id. (citing Mulligan v. Nichols, 835 F.3d 983, 989-990 (9th

12   Cir. 2016)). Defendants further contend that the comments "do not appear to be actionable under

13   a defamation theory anyway." Id. at 17-18 (citing Terry v. Davis Cmty. Church, 131 Cal. App. 4th

14   1534, 1552 (2005)).

15             Plaintiff did not address these claims specifically in her opposition. See ECF No.

16   10. Defendants, in their reply, maintain their claim that none of these actions constitute adverse

17   actions and Plaintiff failed to identify case law to support such a finding. ECF No. 18, pg, 3.

18             As to the comments on May 14, 2025, this Court is persuaded by Defendant's

19   argument that it is a high bar to establish retaliation in the form of comments made by

20   government officials. See Mulligan v. Nichols, 835 F.3d 983, 989 (9th Cir. 2016) (holding that

21   "Retaliation claims involving government speech warrant a cautious approach by courts" in part

22   because "public employees and officials retain rights to free speech."). Plaintiff claims that the

23   comments on May 14, 2025, calling Plaintiff 's petition seeking to remove a member of the board

24   a scam, was retaliation for Plaintiff "filing litigation." However, Plaintiff does not clarify what

---

[3] The Court notes that Claims 9 and 13 arise from the same May 14, 2025, comments and
therefore appear to be duplicative, except that Plaintiff brings Claim 13 against the City, in
addition to Defendants Murphy and Turner who are also named in Claim 9.  Thus, the Court will
assume Claim 9 is against the individual Defendants for the comments on May 14, 2025, and
Claim 13 is asserting municipality claim for those same comments. This does not impact the
Court's determination that Claims 9 and 13 are not cognizable.

1   litigation she is referring to, whether it was about her requests for public records or litigation

2   related to the writ petition Plaintiff presented. Accordingly, Plaintiff's retaliation claims as to the

3   comments made on May 14, 2025, are conclusory and not cognizable. The undersigned will

4   recommend Defendants motion to dismiss as to Claims 9 and 13, with leave to amend.

5           As to Claim 11, Plaintiff contends that the "installation of Ring cameras

6   immediately after Plaintiff's July 15 audit was a targeted intimidation tactic designed to chill

7   future protected speech." ECF No. 1, pg. 30. This Court agrees with Defendants that it is difficult

8   to understand how this could constitute adverse action when the cameras were installed in a

9   public place. Additionally, Plaintiff claims it is in retaliation for her "audit" in which Plaintiff

10  recorded Defendants inside City Hall. It would be incongruent to claim that Plaintiff has a right to

11  record in City Hall but Defendants recording in the same place amounts to an adverse action.

12  Therefore, the undersigned will recommend Defendants' motion to dismiss as to Claim 11, with

13  leave to amend.

14      I.      **Claim 10: Spoilation of Evidence / Access to Courts Claim**

15          Plaintiff asserts that when Defendants Kennedy, Kennedy Solutions, Inc., and City

16  of Portola, deleted "logs and backups" after an alleged cyber breach, it "foreclosed Plaintiff's

17  ability to bring a nonfrivious claim under Cal. Civ. Code §1798.98, and to pursue remedies under

18  the UCL, Bus. & Prof. Code §17200" because the only evidence of the breach was destroyed.

19  ECF No. 1, pg. 30. Defendants argue that Plaintiff fails to establish injury and "these allegations

20  are conclusory and fail to state a non-frivolous predicate claim." ECF No. 5-1, pg. 15. Defendants

21  contend that the "one statute specifically invoked, Cal. Civil Code § 1798.82, imposes duties on a

22  'person' or 'business,' not a *public entity* like the City. Public entities are not included in the

23  definition of 'person' absent express legislative inclusion." Id. (emphasis in original; citing Wells

24  v. One2One Learning Foundation, 39 Cal.4th 1164, 1192 (2006); Johnson v. Arvin-Edison Water

25  Storage Dist., 174 Cal.App.4th 729, 736 (2009)).

26          The United States Supreme Court has identified two categories of access-to-court

27  claims.  Christopher v. Harbury, 536 U.S. 403, 412-13 (2002).  The first category includes

28  "forward-looking" claims, which allege that official action presently frustrates a plaintiff's ability

23

1    to prepare and file a suit.  Id. at 413.  The second category, "backward-looking" claims, allege

2    that due to official action, a specific case "cannot now be tried (or tried with all material

3    evidence), no matter what official action may be in the future."  Id. at 413-14.  These cases look

4    "backward to a time when specific litigation ended poorly, or could not have commenced, or

5    could have produced a remedy subsequently unobtainable."  Id. at 414.

6              To establish an access to the court violation, am individual must identify an actual

7    injury.  Lewis, 518 U.S. at 349-351; Nev. Dep't of Corrs. v. Greene, 648 F.3d 1014, 1018 (9th

8    Cir. 2011); Urmancheev v. Anglea, No.:1:19-cv-00791-DAD-JLT (PC), 2020 WL 1904818, at *2

9    (E.D. Cal. Apr. 17, 2020).  An actual injury is "actual prejudice with respect to contemplated or

10   existing litigation, such as the inability to meet a filing deadline or to present a claim."  Lewis,

11   518 U.S. at 349; Urmancheev, 2019 WL 1904818, at *2.  An actual injury is a jurisdictional

12   requirement and may not be waived.  See Lewis, 518 U.S. at 348-52; Urmancheev, 2019 WL

13   1904818, at *2.  And in the backward-looking context more specifically, a plaintiff must identify:

14   (1) loss of a "nonfrivolous," "arguable" underlying claim; (2) the official acts that frustrated the

15   litigation of the underlying claim; and (3) a remedy that "may be awarded as recompense but [is]

16   not otherwise available in some suit that may yet be brought."  Harbury, 536 U.S. at 414-18;

17   Urmancheev, 2019 WL 1904818, at *2; Kabede v. Brown, No. 2:16-cv-1765 DB (P), 2017 WL

18   714300, at *6 (E.D. Cal. Feb. 22, 2017).

19             Cal. Civ. Code §1789.82 requires that "a person or business" disclose a data

20   breach when such breach results in unauthorized sharing of "personal information," as defined as

21   "an individual's first name or first initial and last name in combination with" other data, such as a

22   social security number, drivers license number, account or credit card number, medical

23   information, and other specified information, for more than 500 California residents. Cal Civ

24   Code § 1798.82. Here, Plaintiff asserts that the City of Portola "experienced a cyber incident

25   involving a Trojan/ransomware infection on its accounting workstation, which contained sensitive

26   personal data of Plaintiff and other residents." ECF No. 1, pg. 21. Plaintiff does not specify what

27   type of personal data was accessible nor how many individuals may be impacted. Plaintiff does

28   not actually assert that the sensitive personal information was disclosed, just that devices that

24

1   have sensitive data were subject to a "cyber incident involving a Trojan/ransomware infection."

2   Further, it is unclear how Plaintiff has knowledge of this breach but appears to simultaneously

3   claim that the only evidence of the breach was deleted by Defendants.

4         While Defendants argue that this code does not apply to the City of Portola

5   because municipalities do not fall within the definition of "person or business" for purposes of

6   this statute, the Court notes that Plaintiff asserts this claim against the City of Portola, Jon

7   Kennedy, and Kennedy Solutions, Inc. Thus, this argument would only apply to the claim as it is

8   asserted against the City, not the other Defendants.

9         Plaintiff does not provide sufficient facts to show any claim actionable under Cal.

10   Civ. Code § 1798.82. Thus, as currently pleaded, the complaint does not establish that

11   Defendants' actions presently frustrate Plaintiff's ability to pursue a remedy in court nor show

12   that such a case could not be tried in the future. However, such deficiencies may be resolved with

13   amendment. Thus, the undersigned will recommend Defendants' motion to dismiss as to Claim

14   10, with leave to amend.

15        **J.**    **Claim 12: Civil Rights Conspiracy**

16         Plaintiff contends that "Defendants reached an agreement to violate Plaintiff's

17   constitutional rights by using CivAssist to collect IP/meta data, deanonymize Plaintiff, and

18   weaponize that information." ECF No. 1, pg. 31.  Defendants argue that Plaintiff does not provide

19   facts "underlying constitutional violation for a § 1983 conspiracy claim. Nor does it plead any

20   facts showing an actual agreement among defendants, only conclusory assertions of 'conspiracy,'

21   which does not state a claim." ECF No. 5-1, pg. 19. This Court agrees. There cannot be a

22   cognizable conspiracy claim when the complaint fails to assert a cognizable underlying

23   constitutional violation. The undersigned will recommend Defendants' motion to dismiss as to

24   Claim 12, with leave to amend.

25   / / /

26   / / /

27   / / /

28   / / /

### III. CONCLUSION

Based on the foregoing, the undersigned orders and recommends that:

1.   It is ORDERED that Defendants shall file an opposition on or before December 3, 2025, if they oppose the clarification regarding defense representation motion;

2.   It is ORDERED that Plaintiff will then have until December 15, 2025, to file a reply to any opposition;

3.   It is RECOMMENDED that Defendants' motion to dismiss be granted as to all claims; and

4.   It is RECOMMENDED that Plaintiff be granted thirty days leave to amend her complaint as to all claims.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within 14 days after being served with these findings and recommendations, any party may file written objections with the court. Responses to objections shall be filed within 14 days after service of objections. Failure to file objections within the specified time may waive the right to appeal. See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated:  November 19, 2025

DENNIS M. COTA
UNITED STATES MAGISTRATE JUDGE

26